IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**CHRISTY LYNN WATFORD**,

      Plaintiff,

v.

**DALE B. COWART**,

      Defendant.

Civil Action No. 7:12-CV-148 (HL)

## ORDER

This case is before the Court on Defendant's Motion for Partial Summary Judgment (Doc. 33). For the reasons discussed herein, the motion is granted.

## I.   FACTS

On March 31, 2012, Plaintiff and Defendant were involved in a car accident in Cook County, Georgia. On November 5, 2012, Plaintiff filed a complaint for damages, alleging that Defendant caused the accident and Plaintiff's resulting injuries by negligently and recklessly operating her vehicle. Plaintiff's prayer for relief contains requests for general damages, special damages, punitive damages, and attorney's fees and costs pursuant to O.C.G.A. § 13-6-11. (Compl. at 5; Doc. 1 at 5).

In her answer, Defendant admitted that her vehicle made contact with the vehicle operated by Plaintiff and that she negligently operated her vehicle. (Answer at ¶ 7; Doc. 30 at 3). Defendant specifically admitted that she was negligent in that she failed to keep her vehicle under proper control, failed to stop for a posted stop

sign, failed to keep a proper lookout for traffic ahead of her, and operated a vehicle under the influence of alcohol. (Answer at ¶ 8; Doc. 30 at 3-4).

Auto-Owners Insurance Company insured the vehicle operated by Defendant. The Auto-Owners policy is the only liability coverage available to Defendant. The liability coverage limit provided by the policy insuring Defendant's vehicle is a $300,000 combined single limit. (Doc. 33-1 at 4). Plaintiff is also an insured under a separate Auto-Owners policy which provides uninsured motorist ("UM") coverage. (Doc. 33-2).

On February 12, 2013, in exchange for payment of the liability policy limit of $300,000, Plaintiff executed a limited liability release pursuant to O.C.G.A. § 33-24-41.1. The release states in pertinent part[1]:

> [T]he Undersigned hereby releases and discharges **(TO THE EXTENT DEFINED IN THE SUCCEEDING PARAGRAPHS)** the Insurer and the Limited Releasees from claims, demands, actions, causes of action, suits, liabilities, damages, costs, and obligations of any kind or nature whatsoever, both known and unknown, which have resulted in the past, which exist at present, or which may in the future arise from the Occurrence.
>
> **THE RELEASE OF THE INSURER BY THE UNDERSIGNED IS RESTRICTED TO ANY CLAIMS OF THE UNDERSIGNED AGAINST THE INSURER UNDER THE LIABILITY COVERAGE PROVIDED BY THAT**

---

[1] The "Undersigned" is Plaintiff. The "Insurer" is Auto-Owners. The "Limited Releasees" are Defendant or the administrator or executor of her estate. The "Occurrence" is defined as "[b]odily injuries and personal injuries of the Undersigned resulting or to result from a motor vehicle accident which occurred on or about May 31, 2012 at the intersection of Georgia Highway 76 and Cowart Cobb Road in Cook [County], Georgia, which is more particularly described in Civil Action Number 7:12-CV-148-HL pending in the United States District Court for the Middle District of Georgia, Valdosta Division." (Doc. 33-3).

**POLICY OF MOTOR VEHICLE INSURANCE ISSUED BY INSURER TO LAMONT COWART WHICH IS DESIGNATED AS POLICY NUMBER 46-532-244-00. THE PARTIES TO THIS AGREEMENT RECOGNIZE AND ACKNOWLEDGE THAT THE UNDERSIGNED HAS ADDITIONAL CLAIMS AGAINST INSURER UNDER A POLICY OF MOTOR VEHICLE INSURANCE WHICH MAY PROVIDE UNINSURED MOTORIST COVERAGE TO THE UNDERSIGNED. THIS AGREEMENT DOES NOT CONSTITUTE A RELEASE BY THE UNDERSIGNED OF THE INSURER FOR ANY CLAIM FOR UNINSURED MOTORIST COVERAGE UNDER ANY POLICY OF INSURANCE ISSUED BY INSURER.**

It is understood and agreed that this Agreement is entered into pursuant to the provisions set forth in O.C.G.A. § 33-24-41.1 and it is intended that the force and effect of this Agreement shall be as intended by said Code Section. This Agreement shall operate as a release of the Insurer by the Undersigned for liability claims **ONLY** arising out of the Occurrence under that policy of motor vehicle insurance issued by Insurer to Lamont Cowart which is designated as policy number 46-532-244-00. This Agreement shall act as a limited release of the Limited Releasees, meaning that the Limited Releasees are released from all injuries and damages to the Undersigned arising out of the Occurrence, except that the Agreement shall not bar any claims the Undersigned have against the Limited Releasees to the extent that other insurance coverage is available which covers the claim of the Undersigned against the Limited Releasees. Furthermore, this Agreement shall not operate as a release of any other persons or entities not specifically named herein and shall not operate as a release of the Undersigned's claims against any insurer not named in this limited release.

**ADDITIONALLY, PURSUANT TO O.C.G.A. §§ 51-1-32 AND 51-1-34, THE UNDERSIGNED IS SETTLING HER CLAIMS AGAINST THE INSURER AND LIMITED RELEASEES FOR PERSONAL INJURY AND BODILY INJURY ONLY. NOTHING CONTAINED IN THIS RELEASE WILL BAR OR PREVENT THE**

**UNDERSIGNED FROM PROSECUTING A CAUSE OF ACTION FOR PROPERTY DAMAGE AGAINST THE INSURER AND LIMITED RELEASEES.**

(Doc. 33-3) (emphasis and capitalization in original).

Based on the release, Defendant has now moved for partial summary judgment on three issues: (1) Plaintiff's claim for punitive damages; (2) Plaintiff's claim for attorney's fees under O.C.G.A. § 13-6-11; and (3) Plaintiff's recovery of damages in general.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91

L.Ed.2d 202 (1986). In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Trial Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).

## III.    ANALYSIS

### A.    Punitive Damages Claim

Defendant first argues that Plaintiff's claim for punitive damages fails as a matter of law. All liability coverage available to Defendant has been exhausted, and the only remaining insurance available to Plaintiff is UM coverage provided by Auto-Owners to Plaintiff. However, under Georgia law, UM carriers are not liable to their own insureds for punitive damages. State Farm Mut. Auto. Ins. Co. v. Weathers, 260 Ga. 123, 123, 392 S.E.2d 1, 1 (1990); Roman v. Terrell, 195 Ga. App. 219, 222, 393 S.E.2d 83, 86 (1990). Thus, Defendant is correct that Plaintiff cannot recover punitive damages from her UM carrier. Unfortunately, the matter before the Court is not that straight forward.

Plaintiff argues that under the specific language of the limited liability release, she only released her personal injury and bodily injury claims against Defendant. Plaintiff contends that because the release does not expressly release Defendant from any punitive damages liability, her punitive damages claim is still viable. The Court disagrees.

The limited liability release provisions of O.C.G.A. § 33-24-41.1 were enacted to provide a framework for a claimant injured in an automobile accident to settle with the tortfeasor's liability carrier and still proceed with a claim under the injured party's UM policy. The statute authorizes the claimant to settle with the tortfeasor's liability carrier by accepting payment of the carrier's limits of liability coverage in return for the claimant's execution of a "limited release applicable to the settling carrier and its insured based on injuries to such claimants. . . ." O.C.G.A. § 33-24-41.1(a). Plaintiff executed such a limited release in exchange for the payment of the liability policy limits of $300,000. In exchange for the $300,000, Plaintiff agreed to release Defendant from "claims, demands, . . . , damages, . . . , of any kind or nature whatsoever, both known and unknown, which have resulted in the past, which exist at present, or which may in the future arise from the Occurrence." (Doc. 33-3 at 1). Plaintiff also agreed that under the release, Defendant was "released from all injuries and damages to the Undersigned arising out of the Occurrence," except to the extent that other insurance coverage, i.e., Plaintiff's UM coverage, exists. (Doc. 33-3 at 2). But as noted above, punitive damages are not recoverable under a UM policy, and the Court finds as a matter of law that Plaintiff cannot seek punitive damages against her UM carrier.

The Court finds that Plaintiff has released her punitive damages claim against Defendant. The fact the release does not specifically mention Plaintiff's punitive damages claim does not mean that it was expressly excluded from the limited

release. Instead, the punitive damages claim is encompassed in the general language releasing Defendant from all "claims" and "damages" relating to the car accident. If the parties intended to reserve any specific claims or rights under the release, they would have done so specifically, much the way they did with the property damage claim. Clearly the parties recognized that they needed to carve out an exception for the property damage claim so that it would not be released along with the remainder of Plaintiff's claims against Defendant. If the parties had intended to keep Plaintiff's punitive damages claim alive, that claim would have been specifically referenced as not being included in the release. But as it stands, the Court finds that the only claim Plaintiff retained against Defendant was a potential property damage claim. As she has released her punitive damages claim, Plaintiff will not be able to pursue such a claim against Defendant at the trial of this case.[2]

### B.    O.C.G.A. § 13-6-11 Attorney's Fees Claim

Defendant next moves for summary judgment on Plaintiff's request for attorney's fees and costs under O.C.G.A. § 13-6-11. That code section provides that "where the defendant has acted in bad faith, has been stubbornly litigious, or has

---

[2] Plaintiff is correct that punitive damages can attach to a property damage claim. However, that proposition does not apply under the facts of this case. Plaintiff has not asserted a property damage claim in this case, and the record shows that Plaintiff could not assert such a claim because she did not own the car she was driving at the time of the accident. "[A] claim for punitive damages has efficacy only if there is a valid claim for actual damages to which it could attach. Punitive damages may not be recovered where there is no entitlement to compensatory damages." Flynn v. Allstate Ins. Co., 268 Ga. App. 222, 222-23, 601 S.E.2d 739, 740 (2004) (quoting Southern Gen. Ins. Co. v. Holt, 262 Ga. 267, 270, 416 S.E.2d 274 (1992)). Because Plaintiff cannot recover for property damage, she also cannot recover any associated punitive damages.

caused the plaintiff unnecessary trouble and expense," the jury may award attorney's fees and costs of litigation. O.C.G.A. § 13-6-11. Defendant argues that Plaintiff cannot recover fees and costs from her UM carrier, which is the only remaining entity against which Plaintiff can recover any damages.

Georgia law is settled that O.C.G.A. § 33-7-11, the Georgia Uninsured Motorist Statute, does not authorize a plaintiff to recover attorney's fees and litigation expenses pursuant to O.C.G.A. § 13-6-11 from a UM insurer. Smith v. Stoddard, 294 Ga. App. 679, 681, 669 S.E.2d 712, 715 (2008).[3] Plaintiff does not dispute this general rule, but instead argues that because the limited liability release does not specifically release Defendant from an attorney's fees claim, that claim is still viable.

For the same reasons discussed in Section III(A) *supra* with respect to the punitive damages claim, the Court finds that Plaintiff cannot maintain an attorney's fees claim against Defendant. Under the terms of the limited liability release, Plaintiff released Defendant from all claims and damages relating to the car accident, and that would include any attorney's fees claim. Again, if the parties intended to reserve Plaintiff's right to assert a § 13-16-11 claim against Defendant at trial, they would have specifically done so. Plaintiff cannot pursue an attorney's fees claim against

---

[3] While a UM policy could contain provisions specifically allowing for the recovery of attorney's fees and costs, Plaintiff does not argue, and the Court does not find, that the Auto-Owners UM policy which provides coverage to Plaintiff contains such language. *See* Smith, 294 Ga. App. at 682.

Defendant at the trial of this case.[4] Further, Plaintiff cannot assert an attorney's fees claim against her UM insurer, as such a claim is not allowed under Georgia law.

### C.    Limit of Plaintiff's Recovery of Damages

Defendant finally moves for judgment in her favor limiting Plaintiff's recovery as a matter of law. First, Defendant seeks a ruling that Defendant is entitled to a setoff in the amount of $300,000 against any verdict rendered in favor of Plaintiff. Second, Defendant seeks a ruling that Plaintiff cannot enforce any judgment against Defendant's personal assets.

A limited liability release is not admissible at trial. However, the "amount paid [pursuant to a limited release] shall be admissible as provided by law as evidence of the offset against the liability of an uninsured motorist carrier and as evidence of the offset against any verdict of the trier of fact." O.C.G.A. § 33-24-41.1(d)(2). In other words, the court is required to write down any verdict rendered in favor of the plaintiff by the amount of the payment received by the plaintiff from the defendant's liability insurer. The Court agrees with Defendant that with respect to this particular case, any verdict awarded by the jury in excess of $300,000 must be written down by that amount.

---

[4] Plaintiff is again correct that an attorney's fees claim can attach to a property damage claim, but as discussed *supra*, Plaintiff has never asserted, and cannot assert, a property damage claim in this case. Like a punitive damages claim, a § 13-6-11 attorney's fees claim is an ancillary claim. A claim for fees under § 13-6-11 cannot stand on its own, but instead must have a substantive claim for relief to which it can attach. As Plaintiff does not have an underlying property damage claim, the fee claim cannot stand.

The Court also finds as a matter of law that Plaintiff cannot enforce any judgment against Defendant's personal assets. By executing the limited liability release, Plaintiff has released Defendant from any personal liability for any judgment that may be awarded after the trial of this case. Any judgment in Plaintiff's favor will be enforceable only against Plaintiff's UM carrier.

## IV.    CONCLUSION

While in no way condoning Defendant's behavior on March 31, 2012, the Court grants Defendant's Motion for Partial Summary Judgment (Doc. 33) in its entirety. Plaintiff cannot seek punitive damages against either Defendant or Plaintiff's UM carrier. Plaintiff cannot seek attorney's fees and costs under O.C.G.A. § 13-6-11 against either Defendant or Plaintiff's UM carrier. Defendant is entitled to a setoff in the amount of $300,000 against any verdict rendered in Plaintiff's favor. Finally, Plaintiff cannot enforce any judgment against Defendant's personal assets.

This case is set for trial during the January 2014 trial term. The pretrial conference will be held on Monday, January 6, 2014. Jury selection will be held on Tuesday, January 21, 2014. A pretrial notice containing further instructions will be sent out in the near future.

**SO ORDERED**, this the 7th day of November, 2013.

_s/ Hugh Lawson_

**HUGH LAWSON, SENIOR JUDGE**

mbh